# IN THE CIRCUIT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

MELISSA PERRY
7110 Patterson Street
Lanham, MD 20706

          Plaintiff

v.

CAL19-21543

NATIONAL ASSOCIATION OF HOME
BUILDERS OF THE UNITED STATES
d/b/a National Association of Home
Builders
1201 15TH Street, NW
Washington, DC 20005


Serve on:
JAMES RIZZO
1201 15th Street, NW
Washington, DC 20005

          Defendant.

## COMPLAINT

NOW COMES, Melissa Perry (hereinafter "Plaintiff"), by and through her attorneys, Kurt P. Roper, Esquire, and the law firm of Staiti & DiBlasio, LLP, files this Complaint against National Association of Home Builders of the United States d/b/a National Association of Home Builders (hereinafter referred to as "NAHB") for Wrongful Termination on the basis of race and for Breach of Contract, in support of her claims, Plaintiff respectfully states as follows:

1



1. NAHB wrongfully discharged Plaintiff in violation of Maryland public policy by terminating her on the basis of Plaintiff's race.[1]

2. Prince George's County Circuit Court is the appropriate forum as the events giving rise to Plaintiff's claims occurred in Prince George's County and Plaintiff was injured by NAHB in Prince George's County.

3. Jurisdiction exclusively in Maryland is proper pursuant to §6-103 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland based on the following facts:

   a. NAHB caused tortious injury to Plaintiff in Maryland by causing injury to Plaintiff as a result of NAHB wrongfully terminating Plaintiff;

   b. NAHB also transacts business and performs work in Maryland as evidenced by the NAHB's Association Management Conference which is taking/took place in Baltimore, MD, July 23-July 26, 2019 at the "Renaissance Baltimore Harborplace Hotel in Baltimore, MD." See, Exhibit A.

   c. NAHB also conducted business and performs work in Maryland by and through Plaintiff as she performed significant work duties from her

---

[1] Plaintiff is African American, the majority of employees of NAHB are Caucasian, her supervisor was Caucasian, and Plaintiff believes that while she excelled as an employee, she was always viewed as an outsider, and the only factor supporting this view was that she was African American.
2

SCANNED

      home in Maryland and Plaintiff resides in Maryland and all of her work performed for the benefit of NAHB from Plaintiff's home occurred in Maryland; See, *infra*, Paragraph 6.

    d. NAHB also conducts business in Maryland by and through the Maryland Home Builder Registration Unit which provides from the MHBRU website, that "performance standards or guidelines adopted at the time of the contract . . . by the National Association of Home Builders." See, Exhibit B.

4.     Venue is proper pursuant to §6-201 and/or §6-203 of the courts and Judicial Proceedings Article of the Annotated Code of Maryland.

5.     Plaintiff's employment with NAHB was unlawfully terminated on or about September 7, 2018, Plaintiff had been employed by NAHB for approximately 3 years as an Executive Assistant to the CEO of NAHB,[2] and NAHB's office is located in Washington, DC, at 1201 15th Street, NW, 20005.

6.     Plaintiff conducted a significant portion of her employment duties from her home[3] located in Prince George's County, Maryland, located at 7110 Patterson Street, Lanham, 20706.

---

[2] The CEO of NAHB is Mr. Jerry Howard.
[3] Indeed, factual allegations in the instant case stem from the amount of work/overtime hours Plaintiff was required to conduct during "off hours", from her home located in Prince George's County, MD.

3

7. Following her unlawful termination, Plaintiff sought relief through the United States Equal Employment Opportunity Commission (hereinafter "EEOC"). The EEOC failed to provide Plaintiff appropriate relief, resulting in the filing of the instant lawsuit. See, Exhibit C.

8. During 2018 and prior to her termination, Plaintiff was racially discriminated against by NAHB's employees and agents.

9. In support of her claim of racial discrimination is the fact that Plaintiff always performed her job at a high level without ever receiving criticism/discipline and in fact she received the opposite, throughout Plaintiff's course of employment, Plaintiff always received excellent performance reviews, she was a valued employee of NAHB, and she went above and beyond for the CEO and Board,[4] Mr. Jerry Howard,[5] ---- in fact, Plaintiff's performance reviews include glowing statements from Mr. Howard, in which he concluded that "Melissa exceeds here . . . she is a great communicator . . . Melissa has done an excellent job this year." See, Exhibit D, Performance Review-2017, Page 2 and 3.

10. Despite all of her efforts and the fantastic performance reviews, Defendant fabricated, without any actual justification, an avenue to terminate Plaintiff as evidenced by the following facts:

---

[4] Plaintiff's duties consisted of supporting the CEO, Jerry Howard, and the Board, namely, Randy Noel, Greg Ugalde, Dean Mon, John Fowke, and Granger MacDonald. The CEO, and all of the Board, are Caucasian.

[5] Mr. Howard was Plaintiff's direct supervisor and Plaintiff reported to Mr. Howard directly.

    a. NAHB pretextually attempted to use Plaintiff's excellent employment skills against her to justify termination, Plaintiff was listed as the Point of Contact on Mr. Howard's regular out of state business trips, and Plaintiff had to be ready to respond to anything Mr. Howard needed or requested, at all hours of the day and night. Additionally, Mr. Howard always approved Plaintiff's overtime requests, even up and until the date of Plaintiff's wrongful termination.[6] See, Exhibit E.

11. As a result of Plaintiff incurring overtime hours, in order to comply with her job requirements as Point of Contact for Mr. Howard, NAHB targeted Plaintiff, and pretextually used Plaintiff's incurring overtime as a sham justification for her termination.[7]

12. Additionally, NAHB has a company policy pursuant to which NAHB provides employees a Performance Improvement Plan (hereinafter "PIP") option prior to termination. While the evidence does not indicate Plaintiff's work was suffering, NAHB never offered Plaintiff the opportunity to enter into a PIP, and even if it were true that Plaintiff needed a PIP, she was deprived of the opportunity to enter into a PIP on the

---

[6] This fact is very significant because NAHB feebly attempted to use Plaintiff's incurring overtime, overtime that was approved and authorized by the CEO, to justify her termination.
[7] NAHB also cited a clerical issue from Plaintiff's resume, submitted 3 years prior by a third party temp agency, to justify her termination --- which is evidence of racial discrimination because NAHB had to search to find something to allegedly justify termination.

basis of her race. NAHB's refusal to offer Plaintiff to enter a PIP is a breach of their agreement with Plaintiff.

13. Plaintiff's wrongful termination by NAHB violates a clear mandate of Public Policy pertaining to racial discrimination, as evidenced by MD Code, State Government, 20-602, which provides, "It is the policy of the State . . . to assure all persons equal opportunity in . . . employment and in all labor-management-union relations, regardless of race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, general identity, or disability unrelated in nature and extent so as to reasonably preclude performance of employment."

14. In the instant case, the evidence overwhelmingly supports the conclusion that NAHB violated public policy by terminating Plaintiff on the basis of her race and the evidence also shows that NAHB breached their agreement with Plaintiff by blatantly denying her the opportunity to enter into a PIP.

## Count I – Wrongful Termination – Racial Discrimination – Violation of Maryland Code

15. Plaintiff hereby restates and incorporates by this reference Paragraphs 1-14.

16. Plaintiff maintains, and the evidence unequivocally supports, that Plaintiff's race played a factor in her unlawful termination.

17. During 2018 and prior to her termination, Plaintiff was racially

discriminated against by NAHB's employees and agents.

18. Moreover, NAHB's own records and internal documents will confirm racial discrimination by NAHB against Plaintiff. See, Exhibits E and F.

19. As a direct result of NAHB's misconduct, Plaintiff has suffered damages.

20. NAHB's conduct in terminating Plaintiff was deliberate, malicious, willful, and intentionally calculated to inflict harm upon Plaintiff.

21. As a result of NAHB's wrongful termination of Plaintiff, she has been left without employment, deprived of her annual salary, suffered damage to her reputation and has otherwise been damaged.

WHEREFORE, Plaintiff respectfully prays that the Court grant relief as follows:

A. That this Court enter judgment against Defendants in favor of Plaintiff in the amount of Sixty Thousand Dollars ($60,000.00) in compensatory and punitive damages; and

B. That Plaintiff be awarded costs and reasonable Attorney's Fees; and

C. And for such other and further relief as Plaintiff may be entitled to receive.

### Count II – Breach of Contract

22. Paragraphs 1 through 21 are incorporated by this reference.

23. Plaintiff and NAHB entered into an agreement on May 1, 2015. See Exhibit F.

24. Pursuant to the terms of the May 1, 2015 agreement, Defendant failed to abide by the agreement and materially breached their obligations to Plaintiff.

   a. Specifically, NAHB agreed that they would not "unlawfully discriminate in employment." See, Exhibit F, Page 4.

   b. NAHB also failed to follow and "be bound by all company policies . . ." See, Exhibit F, Page 4.

   c. NAHB also failed to follow their own company policies as they agreed to do, by depriving Plaintiff of the opportunity to enter a PIP.

25. Plaintiff suffered damages and continues to suffer damages as a direct result of Defendant's breach of agreement.

WHEREFORE, Plaintiff respectfully prays that the Court grant relief as follows:

   A. That this Court enter judgment against Defendants in favor of Plaintiff in the amount in of Ten Thousand Dollars ($10,000.00) in compensatory damages; and

   B. That Plaintiff be awarded costs and reasonable Attorney's Fees; and

   C. And for such other and further relief as Plaintiff may be entitled to receive.

Kurt P. Roper, Esquire
Staiti & DiBlasio, LLP
401 Headquarters Drive, Suite 202
Millersville, Maryland 21108

SCANNED

(410) 787-1123
kroper@staiti-diblasio.com
CPF # 0812180083
*Attorney for Plaintiff, MELISSA PERRY*

## TRIAL BY JURY

Plaintiff, Melissa Perry, requests a trial by jury.

_____
Kurt P. Roper, Esquire

9